## THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES *v.* INSURANCE COMMISSIONER OF MARYLAND, ET AL.

[No. 209 (Adv.) September Term, 1968.]

*Decided October 11, 1968.*

The cause was argued before HAMMOND, C. J., and MARBURY, McWILLIAMS, FINAN and SMITH, JJ.

*Joseph H. Young,* with whom were *Charles T. Albert* and *Paul V. Niemeyer* on the brief, for appellant.

*Thomas A. Garland, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *S. Leonard Rottman, Assistant Attorney General,* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

This is an appeal by the Equitable Life Assurance Society of the United States (Equitable), plaintiff below, from a judgment of the Superior Court of Baltimore City in favor of Newton I. Steers, Insurance Commissioner of the State of Maryland, Francis B. Burch, Attorney General and Charles E. Moylan, Jr., State's Attorney for Baltimore City. Equitable brought this action for a declaratory judgment Code (1967 Repl. Vol.), Art. 31A, seeking clarification of its rights and liabilities under Maryland's new Usury Law, Chapter 453, 1968 Laws of Maryland (House Bill No. 11), which repeals §§ 1-16 of Article 49 of the Maryland Code entitled "Interest and Usury" and replaced it with new §§ 1-11. We shall refer to the new law as the Act.

The specific issue before the Court is the question of whether interest as defined in the Act includes insurance premiums received by Equitable on Equitable life insurance policies assigned to Equitable as additional collateral security for the repayment of residential mortgage loans. If such retained premiums were to be considered interest they would have to be included in the loan agreement between the lender and the borrower required by § 3 of the Act; they would have to be reflected as interest in the disclosure statement required by § 10 and in the computation of interest under § 6 in order to determine whether or not the interest exceeded the maximum legal permissive limit of eight per cent (8%).

The parties agreed to a stipulation of facts which sets forth that Equitable makes residential mortgage loans in Maryland under two plans, either of which the borrower may elect. One is the Assured Home Ownership plan known as "AHO" and the other Insured Residential Mortgage plan known as "IRM."

If the borrower elects to borrow money from Equitable under the AHO plan, he will give as security for the repayment of the loan not only a mortgage on his home but also the assignment to Equitable of new or existing Equitable policies of permanent cash value life insurance which have premiums payable on a monthly basis, so that such premiums will be paid to Equitable in one sum along with principal and interest payments on the mortgage loan.

If the borrower elects to borrow money under the IRM plan, he also will give as security for the repayment of the loan a mortgage on his home and the assignment to Equitable of permanent cash value life insurance. However, the borrower may assign not only new or existing Equitable policies, but he may assign new or existing policies from other legal reserve life insurance companies, or he may assign a combination of both. Under this plan, the premiums are paid directly to the insurer (whether it be Equitable or not) independently of payments of principal and interest.

Under both programs (the AHO and IRM plans) the life insurance policies are assigned purely as collateral security. Equitable makes no charges and collects no fees of any sort for the assignment of this collateral security, whether it be an Equitable policy or not. If the borrower elects to assign an Equitable policy, the premiums charged for such policy are identical to those charged any other nonborrower purchasing a similar Equitable policy under similar circumstances and they are competitive with similar policies from other companies. There are no hidden charges. Any premiums paid Equitable are entirely and solely compensation for the insurance and no portion of such premiums are compensation for the loan. When a policy is assigned, the borrower retains all of the rights he would retain in any other property which he might offer as collateral security. In addition he retains all of the dividends on the policy which, in the case of a mutual company, are the return of surplus after payment of claims and expenses and after providing for adequate reserves. Upon payment of the loan the assignment is cancelled. During the year 1967 Equitable made over $5,000,000 worth of loans under these programs in the State of Maryland.

For purposes of this case, the parties stipulated to a typical loan transaction under the program where the collateral security is an Equitable policy. The borrower is 40 years old, is married and has children. He is purchasing a home valued at $40,000. To purchase it he borrows $30,000 under the program from Equitable for a term of 20 years at $7\frac{1}{4}\%$ interest per year. In addition to a mortgage on his home, he gives as additional security the assignment of an Equitable adjustable whole life insurance policy with the face amount of $30,000. The premium on the policy at age 40 is $72.00 per month. This premium together with principal and interest totals $309.30 per month. Equitable as the lender retains the entire premium.

If the retained premium is construed as interest under the Act, the average rate of interest during the life of the loan would be 10.98%, a rate in excess of the permissive legal maximum rate of eight per cent (8%). On this premise, if Equitable made the loan retaining the premium and desired to bring the interest rate within the permissive limits of the Act, it could only charge 3.8% interest on the loan, apart from the premium. Equitable argues that such a rate is grossly below the current cost of money being about one-half the alleged going rate of 7.25%. It contends that it could not loan money under its programs and justify such an investment to the mutual policy holders.

The pertinent provisions of the Act are as follows:

"1. (A) The term interest as used in this article means any compensation imposed directly or indirectly by a lender for the extension of credit for the use or forbearance of money * * *.

"1. (B) The following compensation or charges may be paid in connection with a loan without considering it interest and such compensation or charges collected shall not be interest or deemed usurious under any other provision of this Article.

* * *

"1. (B) (6) Actual expenses collected by the lender are specifically enumerated in this section. All other

charges, other than those enumerated below, will be deemed interest:

\* \* \*

"1. (B) (6) (C) For premiums and costs *not retained by the lender* for insuring or indemnifying the lender against loss or liability on or in connection with the loan. (Emphasis supplied.)

"1 (B) (6) (D) Or for insuring the life or health of the borrower on premiums and costs, *not retained by the lender.*" (Emphasis supplied.)

In the recent case of *B. F. Saul Company, et al. v. West End Park North, Inc.,* 250 Md. 707, 246 A. 2d 591, this Court had occasion to construe a number of provisions of the Act, including §§ 1(B) (6) (D), with reference to the construction that should be placed on insurance premiums retained by the lender and had this to say:

"All appellants in their role as lenders receive the benefit of life insurance commissions on some contracts, however, there is no requirement that the borrower obtain life insurance through any institutions made available by the lender. *When commissions are actually retained by the lender such a commission should be included as interest.*" (Emphasis supplied.)

Kenney, J., in the lower court without benefit of our decision in *B. F. Saul Company, et al.,* in a well reasoned opinion, arrived at the same conclusion, stating:

"The Bill as originally introduced contained a paragraph numbered '2' providing:

'Actual expenses collected from a borrower by a lender or its attorney for payment for services rendered in connection with the preparation, closing, or disbursing of a loan, or for the payment of property expenses, taxes, and governmental charges, or premiums for insuring or indemnifying the lender against loss or liability on or in connection with the loan, or for insuring any interest in the property which is the security for the loan against loss from

any hazard, or for insuring the life or health of the borrower, shall not be interest or be deemed usurious under any other provision of this Article.'

"This language was stricken from the original Bill and an effort was made by amendment to incorporate with slight change the above provisions.

"The principal change from the language in the Bill as originally presented and the amendment as it finally passed in this area was the making of insurance premiums and costs retained by the lender interest."

\* \* \*

"It seems to the Court that whether it was necessary or wise, what the Legislature actually said in very plain words is that expenses collected by the lender for premiums and costs in connection with insuring the life and health of the borrower are not interest if not retained by the lender. If, however, the premiums and costs in connection with insuring the life or health of the borrower are retained by the lender, then the Legislature said they are to be considered interest and within the purview of the pertinent provisions of the statute."

The legislative intent expressed by §§ 1(B) (6) (D) was also recognized by this Court in *B. F. Saul Company, et al., supra,* when we affirmed the language of the lower court in that case, which had also considered the question:

"\* \* \*. The main thrust of the lower court's rationale is that the determining factor, in the event of any ambiguity as to whether or not a fee or charge should be included as interest, is whether such a charge is retained by the lender and, if so, it should be treated as interest. That such a construction is a projection of the intent of the Legislature becomes manifest upon reading the Act. \* \* \*." (250 Md. 723)

We think that to give a contrary construction to the language of §§ 1(B) (6) (D) than that expressed by the lower court would be attributing a strained and artificial meaning to the express language of the statute.

This Court on occasions too numerous to cite has employed the rule of statutory construction expressed in *Maryland Medical Service v. Carver*:

"* * *. The cardinal rule of construction of a statute is to discover and to carry out the real legislative intention. *Barnes v. State, ex rel Pinkney,* 236 Md. 564, 574; 204 A. 2d 787, 792 (1962). *Casey Development Corp. v. Montgomery County,* 212 Md. 138, 129 A. 2d 63 (1957). The legislative intent is to be sought in the first instance in the words used in the statute and if there is no ambiguity or obscurity in the language used in the statute, there is usually no need to look elsewhere to ascertain the intent of the legislature. *Board of Supervisors of Election of Baltimore City v. Weiss,* 217 Md. 133, 141 A. 2d 734 (1958). See particularly the comprehensive review of the prior Maryland cases at pages 136 and 137 of 217 Md. If the legislative intent is expressed in clear and unambiguous language, this will be carried into effect by this Court even if this Court might be of the opinion that the policy of the legislation is unwise, or even harsh or unjust, if no constitutional guarantees are impaired by the legislation. *Schmeizl v. Schmeizl,* 186 Md. 371, 46 A. 2d 619 (1946). * * *." (238 Md. 466 at 477-478, 209 A. 2d 582, 588 (1964))

For the reasons we have stated in this opinion the judgment of the lower court is affirmed.

*Judgment affirmed, with costs.*