## SCOVILLE SERVICE, INC. *v.* COMPTROLLER OF THE TREASURY

[No. 322, September Term, 1972.]

*Decided July 5, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Harold T. Grier* for appellant.

*Jon F. Oster, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This appeal by Scoville Service, Inc. (Scoville) is from a decision of the Maryland Tax Court affirming the Comptroller's disallowance of claims for certain tax refunds covering the years 1967-70. Scoville, which operates a parking lot serving the Laurel Raceway, says it paid the taxes on gross receipts derived from parking automobiles under the erroneous assumption that they were taxable pursuant to Maryland Code (1957, 1969 Repl. Vol.) Art. 81, § 402, commonly known as the "admissions" tax.[1] In our

---

1. "§ 402. Levy and amount.

   "There shall be levied, collected and paid a tax at the rate of four and one-half per centum (4¹/₂%) of the gross receipts of every person, firm or corporation derived from the amounts charged for (1) *admission to any place,* whether such admission be by single ticket, season ticket or subscription, (2) *admission within an enclosure in addition to the initial charge for admission. to such enclosure,* (3) the use of sporting or recreation facilities or equipment, and (4) admission, cover charge for seats or tables, refreshment, service or merchandise at any roof garden, cabaret or other similar place where there is furnished a public performance when payment of such amounts entitles the patron thereof to be present during any portion of such performance. The term 'roof garden or other similar place,' shall include any room in any hotel, restaurant, hall or other public place where music or dancing privileges or other entertainment, except mechanical music, radio or television, alone, and where no dancing is permitted, are afforded the patrons in connection with the serving or selling of food, refreshment or merchandise. It is further provided that this section shall not apply to bowling alleys or lanes." (emphasis added).

   Although § 402 has undergone a number of changes in recent years, the

summary, we shall make extensive use of the "Agreed Statement of Facts" that is contained in the joint record extract.

Scoville conducts the parking lot enterprise on land that it leases from Laurel Harness Racing Association (Laurel). The latter also owns the adjacent property on which it operates its racetrack. The track is enclosed by a fence and buildings, including a grandstand, and access is gained by a roadway running from U.S. Route 1 which encircles the enclosed track. Scoville leases the hard-surfaced parking area for the duration of the racing season, lasting forty-two days.

The outer perimeter of the parking area, except that part which extends to Route 1, is enclosed by fences or woods, principally the latter. There are no structures on the parking area. Signs stationed on Route 1 indicate the entrance to the track; the same entrance also leads to the parking area. Admission to the track itself is obtained at gates leading directly into the enclosed racetrack; and by paying to Laurel its admission fees. During the racing season, the parking area operated by Scoville is used exclusively by those attending the races.

A charge for admission is imposed by Laurel upon each racing patron who enters the enclosed track. Scoville collects a separate charge; it is apparently conceded that the sums collected by Scoville are charged uniformly on the basis of each automobile parking on its lot rather than upon the number of individual occupants in each car. The sums charged by Scoville afford no admission to the enclosed track; nor do they convey any other privilege to the automobile owner. Whether the receipts from parking automobiles are within the ambit of § 402 is the sole question presented by this case.

In deciding that the receipts from parking automobiles are taxable as "admissions" under § 402, the tax court concluded:

---

language of the statute, as set forth here, was controlling during the period in question.

"The Court is likewise of the opinion that the parking lot is an ancillary use to the Raceway and that the parking of a car and the entrance to the Raceway is a continuous act, one supplementing the other."

We think the tax court erred in its ruling, and that the Comptroller should have allowed the refund claims.

In brief, Scoville contends that charges for parking automobiles are not included in the statute providing for admissions and amusement taxes, even though the parking lot is owned by and located on the same tract of land as the racetrack. It argues with considerable force that the charge is for the "privilege of parking the automobiles only," and is not part of the price of admission to the track itself — the legitimate object of the statute. The Comptroller, on the other hand, insists that the parking fee is "an initial charge for admission" within the meaning of § 402, and should be considered "part of the gross receipts for admission to the race track."

Whether the legislature, in enacting this statute, intended that it should apply to charges of this type must initially be determined by a careful examination of the statute itself, since the cardinal rule of construction of a statute is to ascertain and carry out the real legislative intention, *Silberman v. Jacobs*, 259 Md. 1, 267 A. 2d 209 (1970); *Atlantic, Gulf v. Dep't of Assess. & Taxation*, 252 Md. 173, 249 A. 2d 180 (1969); *Equitable v. Insurance Comm'r*, 251 Md. 143, 246 A. 2d 604 (1968). While this Court has not had occasion to previously consider § 402 in a context such as this, we think its language is quite clear.[2] We should therefore be mindful of the well-established rule that it is necessary and proper to construe a statute only when it is ambiguous and of doubtful meaning, *Hunt v. Montgomery County*, 248 Md. 403, 237 A. 2d 35 (1968); *Falcone v. Palmer Ford*, 242 Md. 487, 219 A. 2d 808 (1966). And if there is no

---

2. In Villa Nova v. Comptroller, 256 Md. 381, 260 A. 2d 307 (1970), the Court did consider the constitutionality of this statute. Answering the

ambiguity or obscurity in the language of the statute, there is usually no need to look elsewhere to ascertain the intent of the legislature, *Maryland Nat'l Bk. v. Comptroller,* 264 Md. 536, 287 A. 2d 291 (1972); *Atlantic, Gulf v. Dep't of Assess. & Taxation, supra; Department v. Greyhound,* 247 Md. 662, 234 A. 2d 255 (1967); *Md. Medical Service v. Carver,* 238 Md. 466, 209 A. 2d 582 (1965). As we said in *Amalgamated Ins. v. Helms,* 239 Md. 529, 212 A. 2d 311 (1965):

> "In other words, the courts, in the absence of ambiguity, should, as a general rule, confine themselves to a construction of a statute as written, and not attempt, under the guise of construction, to supply omissions or remedy possible defects in the statute, or to insert exceptions not made by the Legislature." 239 Md. at 535-36.

The pertinent part of § 402 provides that a tax will be paid on the gross receipts charged for:

> " . . . (1) admission to any place, whether such admission be by single ticket, season ticket or subscription, (2) admission within an enclosure in addition to the *initial charge for admission to such enclosure. . . .*" (emphasis added).

Although the word "admission" is not defined in the statute, the part quoted above clearly imports a tax on charges paid

---

contention that § 402 amounted to a denial of equal protection, Judge Singley, speaking for the Court, said:

"The statute draws a distinction among four situations:

"1. The typical admission charge imposed by theaters, ball parks, skating rinks and the like;

"2. A second admission charge, such as that imposed for a reserved seat once a general admission charge has been paid;

"3. Charges made for the use of sporting or recreational facilities or equipment; and

"4. Charges for refreshment, service or merchandise at any place where there is music, dancing or other entertainment, whether or not there is an admission or cover charge, as well as for admission, if such a charge is imposed." 256 Md. at 389.

to enter the place itself. A term used in a statute, not there specifically defined, should be construed as having its ordinary and commonly-accepted meaning, *Gaspin v. Browning*, 265 Md. 552, 290 A. 2d 507 (1972); *Arundel Supply Corp. v. Cason*, 265 Md. 371, 289 A. 2d 585 (1972); *Williams v. Loyola College*, 257 Md. 316, 263 A. 2d 5 (1970).

In Webster's Third New International Dictionary, Unabridged, 1971, the word "admission" is defined as:

> "3a. an act of admitting : the fact of being admitted : permission or right to enter . . . 4 : *price of entrance:* fee paid at or for *entering.*" (emphasis added).

While there is no case in Maryland interpreting this term, courts in other jurisdictions under statutes similar to the one here have held, either through judicial construction or by definitions in the statutes themselves, that "admission," as used in this context, means the charge for permission or right to enter a place, *see Fritz v. Jarecki*, 189 F. 2d 445 (7th Cir. 1951); *Grauer v. Director of Revenue*, 193 Kan. 605, 396 P. 2d 260 (1964); *Beach v. Livingston*, 248 S. C. 135, 149 S.E.2d 328 (1966); *Department of Revenue v. Pelican Ship Corporation*, 257 So. 2d 56 (Fla. Dist. Ct. App. 1972); *see also* dissent of Musmanno, J., in *Fierro v. City of Williamsport*, 384 Pa. 568, 120 A. 2d 889 (1956). It logically follows that the legislature contemplated a tax on the "price of entrance" to "any place," and not on a service provided for one's convenience *prior* to entering.

That one may park on the lot has nothing whatever to do with his entry into the racetrack. Patrons must, in any event, pay to enter the track, and automobile passengers (other than the driver), as well as those traveling by public transportation or living nearby, pay no parking charge. Similarly one is free to park in Scoville's lot and not enter the racetrack at all. The situation here is the converse of that presented in *Whitehall Township v. Male*, 77 Pa. D. & C. 133 (1950), where the imposition of an admission tax was upheld in the case of a "drive-in" theater that collected a fee from each automobile as it entered, but made no further

charges. The fee for parking automobiles, therefore, is clearly not an "admission" charge under § 402.

That we deal here with a tax statute lends no particular support to the Comptroller's position. In interpreting a tax statute, we may not extend its provisions by implication beyond the clear import of the language employed; and even where there is doubt as to the scope of the statute, although we find none here, it should be construed most strongly in favor of the citizen and against the state, *F. & M. Schaefer v. Comptroller*, 255 Md. 211, 257 A. 2d 416 (1969); *McConihe v. Comptroller*, 246 Md. 271, 228 A. 2d 432 (1967); *Fair Lanes v. Comptroller*, 239 Md. 157, 210 A. 2d 821 (1965); *Comptroller v. Rockhill, Inc.*, 205 Md. 226, 107 A. 2d 93 (1954).

For its final argument, appellee maintains that we should follow the "long uninterrupted and continuous construction of the statute by the Comptroller." While the interpretation placed by the State Comptroller upon a taxing statute is entitled to great weight as an administrative interpretation acquiesced in by the legislature, *Palm Oil Recovery v. Comptroller*, 266 Md. 148, 159, 291 A. 2d 681 (1972); *Comptroller v. Rockhill, Inc., supra*, at 233; *John McShain, Inc. v. Comptroller*, 202 Md. 68, 73, 95 A. 2d 473 (1953), an administrative interpretation contrary to the clear and unambiguous meaning of the statute will not be given effect, *Atlantic, Gulf v. Dep't of Assess. & Taxation, supra*, at 183; *Department v. Greyhound, supra*, at 669; *Smith v. Higinbothom*, 187 Md. 115, 132, 48 A. 2d 754 (1946).

Having determined for the foregoing reasons that Scoville is entitled to refunds for the years in question, we shall reverse the order of the Maryland Tax Court, and remand the case with instructions to allow the claims in accordance with the provisions of Article 81 governing such refunds.

> *Order reversed; remanded for passage of an order conformable to this opinion; appellee to pay costs.*