519 A.2d 1277

**WASHINGTON NATIONAL ARENA LIMITED PARTNERSHIP t/a The Capital Centre**

**v.**

**COMPTROLLER OF the TREASURY.**

**No. 45, Sept. Term, 1986.**

Court of Appeals of Maryland.

Jan. 27, 1987.

Peter F. O'Malley, Upper Marlboro (Leslie F. Moore and O'Malley, Miles, McCarthy & Harrell, Upper Marlboro and Michael Evan Jaffe, Alan S. Dubin and Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., on the brief), for appellant.

Andrew H. Baida, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Linda Koerber Boyd and Gaylin Soponis, Asst. Attys. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

ADKINS, Judge.

This case presents the question of whether under Code, Art. 81, § 402, a single charge covering admission to events, parking, and club membership may be allocated, for admission tax purposes, between the sum apportionable to admission and the sums apportionable to the other items. Intertwined with this question are issues regarding the standards for review of decisions of the Maryland Tax Court.

That agency concluded that § 402 does not permit allocation. We shall hold that the statute permits allocation as a matter of law, and shall remand for a determination of whether allocation is appropriate on the facts of this case.

## I. *Factual and Procedural Background*

The facts are essentially undisputed. Appellee, Comptroller of the Treasury (the Comptroller), assessed appellant, Washington National Arena Limited Partnership, t/a The Capital Centre (WNA) for $185,646.23 in admissions taxes for the period January 1978 through August 1981. He did so pursuant to the provisions of Art. 81, § 402(a), which in pertinent part read as follows:

> "(1) Except as otherwise provided in this subtitle, any county by resolution may levy a tax on the gross receipts of every person, firm or corporation obtained from sources within the county derived from the amounts charged for:

> "(i) Admission to any place, whether the admission be by single ticket, season ticket or subscription, including a cover charge for seats or tables at any roof garden, cabaret or other similar place where there is furnished a performance, if payment of the amounts entitles the patron thereof to be present during any portion of the performance...." [1]

The circumstances under which the Comptroller applied this statute to WNA are these:

The Capital Centre is a large sports and entertainment arena in Prince George's County. There the Washington Bullets basketball team and the Washington Capitals ice hockey team engage in athletic contests. Additionally, the Capital Centre hosts numerous other sports events, fairs, rodeos, conventions and other productions. WNA operates the Centre. Abe Pollin Sports, Incorporated, is the general partner in WNA.

---

1. Prince George's County, where the Capital Centre is located, has adopted the resolution called for by § 402. Although the tax is levied by the county, it is collected by the Comptroller. Art. 81, § 404(a).

In the Tax Court, Abe Pollin testified that in developing the Capital Centre he conceived the idea of transmuting "the worst seats in the house" into the most desirable seats. This objective was achieved through the creation of sky suites, loges, and portal boxes. The sky suites are located at the very top of the arena seating area. They are luxurious, enclosed, apartment-style rooms, each with its own liquor cabinet, wet bar, bathroom, closed circuit television, stereo facilities, telephone service, living room furniture, and a large window through which the event in progress can be viewed. Loges are located below the sky suites and contain slightly fewer amenities. Portal boxes, which are glass enclosures fitted with plush, moveable seats, are located at the entrances to the arena.

Use of each of these facilities may be obtained via a fixed-term lease, with the cost extending up to $30,000 annually for a sky suite. In addition to the amenities we have described, the single-sum charge for a sky suite, loge, or portal box includes parking in a reserved section of the Capital Centre's parking area and membership in the Capital Club, a restaurant and bar located within the confines of the Capital Centre. The lease for any of the special seating areas we have described is a package arrangement, covering admission and all of the amenities, including parking and club membership. A lessee is not permitted to negotiate a lease covering some, but not all, of the amenities.

The sky suite form of lease contains language typical of that used in all the leases. The "Suiteholder shall use and occupy the Suite solely for the observation of Events at the Centre" and the "Suiteholder's right of access to the Suite for any Event shall be solely by presentation of tickets for each Event...." Each lessee is furnished an appropriate number of tickets for events, parking coupons which are stamped with the dates of particular events, and membership "chits," each chit permitting access to the Capital Club in connection with a specific event.

WNA appealed the Comptroller's admissions tax assessment to the Tax Court. It argued there that the value or cost of amenities apart from bare admission should be determined, and that only the cost of admission should be taxed. The Tax Court affirmed the Comptroller. WNA brought the same argument to the Circuit Court for Prince George's County (Ahalt, J.). That court viewed the allocation question (with respect to parking and club membership) as a pure question of law, observing that § 402 was silent as to allocation, and that "[i]f the legislature intended to not allocate then it would expressly state so in the statute." Judge Ahalt concluded that allocation was permissible. Relying on *Scoville Service, Inc. v. Comptroller*, 269 Md. 390, 306 A.2d 534 (1973), and *Twinbrook Swimming Pool Corp. v. Comptroller*, 274 Md. 88, 333 A.2d 49 (1975), he reversed and remanded to the Tax Court so that it could properly allocate between admission on the one hand and parking and club membership on the other.[2]

The Comptroller appealed to the Court of Special Appeals. That Court viewed the issue as a mixed question of fact and law. Employing the more deferential standard of review appropriate in those circumstances, it concluded in an unreported opinion "that the evidence before the Tax Court was more than sufficient to support its decision that the entire lease price, including parking and Club membership, constituted a single taxable admissions fee" and that the Tax Court "decision, therefore, was not erroneous as a matter of law." *Comptroller v. Washington National Arena*, No. 931, Sept. Term, 1985, slip op. at 8–9 (Md.App. Feb. 21, 1986). We granted *certiorari*, 306 Md. 369, 509 A.2d 133 (1986).

---

**2.** In the circuit court, WNA also contended for allocation of the cost of certain other amenities. The circuit court ruled against it on those matters, and no appeal was pressed with respect to that portion of the circuit court judgment. As a consequence, the only allocation issue before us relates to parking and club membership.

## II. *Allocation*

As Judge Ahalt correctly observed, Art. 81, § 402, which imposes a tax on the gross receipts from admissions, is silent on the question of allocation. Specifically, it is silent as to whether the proceeds of a package arrangement, like the one before us, may be allocated between the part of the package price that relates to admissions to a facility or event and the part, if any, that is not so related. We disagree with his view, however, that legislative failure to proscribe allocation automatically permits it. That omission does no more than render the statute ambiguous or unclear on that point.

In determining whether the legislature intended to permit allocation, it is necessary to determine exactly what the legislature intended to tax. To do that it is necessary to construe the phrase found in § 402 imposing a tax on "gross receipts ... charged for ... [a]dmission." The primary source of legislative intent is, of course, the language of the statute itself. *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 517 A.2d 730 (1986); *Auto. Trade Ass'n v. Harold Folk Enter.*, 301 Md. 642, 484 A.2d 612 (1984). When the legislature has not defined a term, it should be given its ordinary and natural meaning. *Tucker, supra; DeJarnette v. Federal Kemper Ins. Co.*, 299 Md. 708, 475 A.2d 454 (1984).

In *Scoville Service, Inc. v. Comptroller, supra,* we applied these considerations to the word "admission" in § 402 as it then stood and found that the clear import of the word was that it referred to "charges paid to enter the place itself." 269 Md. at 394–95, 306 A.2d at 537. In *Scoville* the Comptroller favored an interpretation that essentially would have taxed payments incident to admission as well as the cost of admission itself. In rejecting the Comptroller's interpretation, we held that § 402 did not apply to charges for services (in that case, parking at a lot adjacent to a racetrack) provided for one's convenience prior to entering the place.

The Comptroller attempts to distinguish *Scoville* based on the method of payment. In *Scoville* the parking lot, although on land owned by the same party that owned the racetrack, was independently managed and payment for parking was wholly separate from payment for admission. In the present case payment for services other than admission is included in an admission package. The Comptroller takes the position that when a lump sum is charged for a package that undoubtedly includes admission to an event, then that entire sum is taxable, regardless of what else the package contains. For example, if WNA, to encourage people from distant parts of the state to attend events at the Capital Centre, set up a single-price package that included admission to the arena, a night's lodging at a hotel in New Carrollton, and two meals at the hotel, the Comptroller would tax the entire cost of the package under § 402.

■ We do not see it that way. In *Scoville* we looked to the plain meaning of the word "admission" to determine legislative intent.[3] We cannot extend a legislative intent to tax admissions to an intent to tax things only remotely or tangentially related to admissions. In short, we think that when a package includes the price of admission and the price of largely unrelated amenities, the legislature intended there to be an allocation of the charge between that portion relating to admissions and that portion not so related. Our predecessors had no difficulty in deciding that such an allocation should be made under the sales tax law, when in a single transaction both real estate (not taxable under the sales tax law) and personalty (taxable) were sold for a single price. *Comptroller v. Kaiser Corp.*, 223 Md. 384, 164 A.2d 886 (1960). The Attorney General reached a similar conclusion in the sales tax context. When the sale of an entire business included the transfer of some items that were subject to the sales tax and some items that were

---

3. "Admission" means "price of entrance: fee paid at or for entering." Webster's Third New International Dictionary 28 (1977 Unabridged ed.).

not, he opined that "[n]ormally it will be necessary for [the Comptroller] to make an administrative determination in individual cases as to what property transferred in a particular transaction is, in fact, subject to the tax." 57 Op.Atty. Gen. 646, 650 (1972). We see no reason why this principle should not be applied under § 402; indeed, we believe the legislature intended its application in order to exclude from taxability items that are not reasonably related or functionally subordinate to the cost of admission.

■ Because allocability depends on the relationship of the additional amenities to admission itself, it is ordinarily necessary to make a factual determination as to that relationship. WNA is incorrect when it argues that parking, for example, is never a taxable admission charge as a matter of law. *Scoville* does not so hold. As we have noted, in that case Scoville leased land from the owner of an adjacent racetrack, and operated a parking lot on that land. It charged a specific per automobile parking fee. Track patrons had to pay additional fees for admission to the races. People were free to park in Scoville's lot even though they did not wish to enter the racetrack. We held that the § 402 tax did not apply to Scoville's parking charges because "[t]hat one may park on the lot has nothing to do with his entry into the racetrack." 269 Md. at 395, 306 A.2d at 538. Thus, the charge for parking was not a charge for admission to the track. But if the parking privilege is tied to admission to particular events, and is used only in connection with attendance at those events, a fact-finder could determine that parking is reasonably related or functionally subordinate to the price of admission.

By the same token WNA is wrong in asserting that *Twinbrook Swimming Pool Corp. v. Comptroller, supra,* holds that the cost of club membership (dues) is not a taxable admission charge as a matter of law. In *Twinbrook* we held that club dues that are not proportionate to admission to the club—*i.e.,* charged whether or not the member ever uses the club—are not taxable under § 402.

But if the membership charge is proportionate to admission to particular events, *Twinbrook* does not prohibit taxing membership as part of the charge for admission. Once again, it is for the fact-finder to decide whether admission to the club is reasonably related or functionally subordinate to the price of admission.

To hold as we have, that § 402 permits allocation under some circumstances, does not, despite the Comptroller's contentions, change the § 402 tax from a gross receipts to a net receipts tax, nor does it create unwarranted exemptions from the admissions tax. It merely requires that the tax be imposed on the charge for admissions and not on the charge or charges for other amenities. It is this that the General Assembly intended to accomplish, and this intention can be implemented by allocation. The difficulty does not lie in stating the principle or rule, but in its application. We shall address this subject as we discuss the appropriate standard of review of the Tax Court's decision.

III. *The Standard of Review and Its Application*

Article 81, § 229(*o*) instructs that:

"In any case, the circuit court for the county shall determine the matter upon the record made in the Maryland Tax Court. The circuit court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record."

We have explained that "[u]nder this standard, a reviewing court is under no statutory constraints in reversing a Tax Court order which is premised solely upon an erroneous conclusion of law." *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834, 490 A.2d 1296, 1301 (1985). "On the other hand, where the Tax Court's decision is based on a factual determination, and there is no error of law, the reviewing court may not reverse the Tax Court's order if substantial evidence of record supports the agency's decision." *Id. See also Supervisor of Assessments of Mont. Co. v. Group Health Ass'n, Inc.,* 308 Md. 151, 517 A.2d

1076 (1986); *St. Leonard Shores Joint Ven. v. Supervisor,* 307 Md. 441, 514 A.2d 1215 (1986).

The Court of Special Appeals viewed the Tax Court decision as one involving at least a mixed question of fact and law. Applying a deferential standard of review to what it perceived as the factual portion of the issue, it concluded that Judge Ahalt had impermissibly substituted his judgment for that of the Tax Court, because there was substantial evidence in the record to support the administrative agency's conclusion that the cost of parking and club membership were not allocable.

We do not believe the record supports that approach to the case. It is true that the Tax Court, in rendering its decision, made reference to various facts pertaining to the parking and club membership arrangements. But its final summation, the essence of its decision, as delivered by Acting Chief Judge Calvert, was

"... on a reading of the statute itself, the Court finds itself in a position that we have to interpret the law. And in interpreting the law we do not ... we do not feel that we can grant any relief.

"I may also say that ... for a number of years Judge Canning was very closely connected with State government and with the legislature and the governor's office ... and we were discussing it from the standpoint that certainly we would think that the legislators would be willing to lend a kind ear to amending this statute so that a situation such as this does not ... is not one that brings the entire tax down on the taxpayer. But until it is changed, we feel that no relief can be granted."

Joint Record Extract E154–55.

■ This language demonstrates that the Tax Court held that no allocation was permissible as a matter of law. That, of course, was precisely the position urged by the Comptroller in the Tax Court (as well as, in the circuit court, the Court of Special Appeals, and this Court). It is plain that the Tax Court accepted that position. As we have pointed

out earlier in this opinion, that reading of the law was incorrect, and application of a deferential standard of review to this purely legal decision was and is inappropriate.

The Tax Court, then, decided a point of law, and that is all it decided. That point of law is all that should have been considered by the circuit court and by the Court of Special Appeals for

> "[j]udicial review of administrative action differs from appellate review of a trial court judgment. In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency."

*United Steelworkers v. Beth. Steel*, 298 Md. 665, 679, 472 A.2d 62, 69 (1984). To do otherwise would be to perform the agency's "administrative function . . . and not our proper function of judicial review." *Id.* at 680, 472 A.2d at 70.

■ The Court of Special Appeals erred, therefore, in reviewing the record and deciding, in effect, that the record included material which, had certain facts been found, would have supported the result reached by the Tax Court. It upheld the Tax Court for reasons other than those stated by the agency. Judge Ahalt concluded, as do we (although for different reasons) that § 402 permits allocation, but erred in holding as a matter of law that parking and club admission charges may never be encompassed within an admission charge. This case must be remanded to the Tax Court for determination of the allocation question on a factual basis, applying the principles we have explained in Part II of this opinion.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM IN PART AND TO

REVERSE IN PART THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, WITH IN-STRUCTIONS TO REVERSE THE ORDER OF THE MARYLAND TAX COURT AND TO REMAND TO THE TAX COURT FOR FURTHER PROCEEDINGS CONSIST-ENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.