554 A.2d 453

**318 NORTH MARKET STREET, INC., et al.**

v.

**COMPTROLLER OF the TREASURY.**

No. 1074, Sept. Term, 1988.

Court of Special Appeals of Maryland.

March 8, 1989.

590

David S. Goldberg, Pikesville, for appellants.

Deborah B. Bacharach, Linda Koerber Boyd, Gaylin Soponis, Asst. Attys. Gen. and J. Joseph Curran, Jr., Atty. Gen., on the brief, Baltimore, for appellee.

Submitted before BLOOM, ROSALYN B. BELL and WENNER, JJ.

WENNER, Judge.

Upon this appeal from an order of the Circuit Court for Baltimore City affirming the decision of the Maryland Tax Court, appellant, 318 North Market Street, Inc., t/a Bradley's Book Store, contends that the Tax Court, and thus the circuit court, erred when it found that the revenues appellant derived from "peep shows" were subject to a 10% admissions and amusement tax. Appellant also contends that Article 81, § 402 of the Annotated Code of Maryland is unconstitutional because it fails to give the taxpayer notice of what constitutes "sporting and recreational facilities and equipment". The appellee is the Comptroller of the Treasury. We shall affirm the judgment of the circuit court.

### Facts

Appellant operates an adult bookstore in Frederick, Maryland. Books, magazines, movies and other items are offered for sale in the front portion of the store, and a clerk is on duty in that area. In the rear portion of the store there are fifteen rather small booths. Each booth has a door which is fitted with an electronic signal that indicates to the clerk whether or not the booth is occupied. Each booth is furnished with a bench, equipment for viewing either films or a video cassette, and a coin box. The exact nature of the viewing equipment varies from booth to booth. For example, some booths have a projector that plays just one movie, while other booths have two projectors with a switch that allows the viewer to select which movie will be seen. Other booths, as we have noted, have the capacity to play video

cassettes. Upon entering one of the booths, a customer may choose from as many as eight selections.

No admission fee is charged to enter either the store or the booths. Once inside the booth, however, nothing can be viewed until the customer deposits a quarter in the coin box. When a quarter is deposited in the coin box, the customer is entitled to view a random portion of the movie or cassette selected. The customer may continue to watch the movie or cassette only so long as quarters are deposited in the coin box.

In November, 1985, Ira Houck, an auditor from appellee's retail sales tax division, conducted an audit of the bookstore. During the audit, Houck learned that appellant had been paying admissions and amusement tax at the rate of 5%, rather than the 10% rate applicable in The City of Frederick to coin-operated amusement devices. Consequently, appellee levied an assessment of $2,631.15 against appellant. A hearing was held before the Comptroller, at which the Comptroller affirmed the assessment. Not to be deterred by that turn of events, appellant sought solace from the Maryland Tax Court.

The Tax Court found that the "peep shows" operated by appellant were not movie theaters within the contemplation of Frederick City Special Resolution 11–79, *see, infra,* and concluded that 10% was the appropriate rate, and affirmed the assessment levied by the Comptroller. Upon appeal to the circuit court, the decision of the Tax Court was affirmed. It was that setback which brings appellant to Annapolis.

### Statutes

Before turning to the issues raised by appellant, we shall briefly review the relevant statutes. It was Article 81, § 402(b)(3) that enabled an incorporated municipality to levy a tax on the gross receipts derived in that municipality from the amounts charged for:

(1) admission to any place, whether the admission be by single ticket; season ticket or subscription, including a

cover charge for seats or tables at any roof garden, cabaret or other similar place where there is furnished a performance, if payment of the amounts entitles the patron thereof to be present during any portion of the performance; (2) admission within an enclosure in addition to the initial charge for admission to the enclosure; (3) the use of sporting or recreational facilities or equipment, including the rental of sporting or recreational equipment, and games of entertainment; and (4) refreshment, service or merchandise at any roof garden, cabaret or similar place where there is furnished a performance.

Article 81, § 402(b)(3) was repealed and re-enacted without substantive change in Md.Ann.Code Tax–General Article, § 4–102.

On December 11, 1975, acting pursuant to former Art. 81, § 402(b)(2), The City of Frederick passed Ordinance S–74. Ordinance S–74 levied a 10% tax on gross receipts from admissions and for the use of sporting or recreational facilities or equipment.

In 1979, The City of Frederick enacted Special Resolution 11–79, which lowered from 10% to 5% the rate applicable to gross receipts received from "admission to any motion picture theater, movie house, outdoor theater, or other similar activity."

Discussion

I.

■ Initially, appellant contends that the Tax Court erred when it found that appellant's "peep shows" were subject to the 10% admissions and amusement tax. Specifically, appellant argues that the booths in which the "peep shows" are viewed are motion picture theaters "or other similar activity" which are taxed at 5%.

The standard of review of a decision of the Tax Court is, of course, a very limited one. Maryland State Government

Code Ann. § 10–215(g)(3)[1] provides that a reviewing court may:

> reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:
>
> (i) is unconstitutional;
>
> (ii) exceeds the statutory authority or jurisdiction of the agency;
>
> (iii) results from an unlawful procedure;
>
> (iv) is affected by any other error of law;
>
> (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
>
> (vi) is arbitrary or capricious.

Thus, the reviewing court, whether it is this court, the Court of Appeals, or the circuit court, shall affirm the decision of the Tax Court if it is supported by substantial evidence and is not erroneous as a matter of law. *Comptroller of the Treasury v. Maryland State Bar Association, Inc.*, 314 Md. 655, 552 A.2d 1268 (1989); *Supervisor v. Asbury Methodist Home*, 313 Md. 614, 625, 547 A.2d 190 (1988). And, substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comptroller of the Treasury v. Maryland State Bar Association, Inc., supra; Comptroller v. Haskin*, 298 Md. 681, 472 A.2d 70 (1984). In applying the substantial evidence test, of course, the reviewing court must not substitute its judgment for that of the Tax Court. *Id.* Instead, it must review the Tax Court's decision in a light most favorable to the Tax Court, and where conflicting inferences can be drawn from the same evidence, it is for the Tax Court to draw the inferences. *Id.*

In the case *sub judice*, we shall hold that the Tax Court correctly found that appellant's "peep shows" were not movie theaters within the meaning of Special Resolution

---

1. Under Md.Ann.Code Tax–General Article, § 13–532, the decision of the Tax Court is subject to judicial review as provided for contested cases in §§ 10–215 and 10–216 of the State Government Article.

11–79, and that the "peep shows" constituted recreational equipment and were correctly assessed at the 10% rate.

### A.

Special Resolution 11–79 expressly provides that the 5% rate is applicable only to gross receipts from *"admissions* to any motion picture theater, movie house, outdoor theater or other similar activity." Although the word "admission" is not defined in either the Resolution or the enabling statute from whence the language is taken, the Court of Appeals said in *Scoville Service Inc., v. Controller,* 269 Md. 390, 394–395, 306 A.2d 534 (1973), that the language we have just quoted "clearly imports a tax on charges paid to enter the place itself." The Court also pointed out that other jurisdictions which have interpreted statutes similar to the one before us have held that "admissions" as used in this context means "the charge for permission or right to enter a place." (citations omitted.) *Id.* at 395, 306 A.2d 534.

In the case *sub judice,* the uncontradicted testimony, much of which was presented by appellant, established that there was no money paid upon entering either the store or the "peep show." Thus, the money collected by appellant for using the "peep show" booths was not an admission charge. *See also Department of Housing and Community Development v. Ellwest Stereo Theaters, Inc.,* 263 Md. 678, 284 A.2d 406 (1971) (the prices paid for peep shows are not admission charges).

We are, of course, aware of our recent decision in *Comptroller of the Treasury v. Family Entertainment Centers of Essex, Inc.,* 70 Md.App. 77, 519 A.2d 1337 (1987), where we said that the term "admission" includes game tokens for purposes of assessing amusement taxes on the gross receipts of video game operators. To the extent that that opinion is in conflict with *Scoville, supra,* it is overruled.

### B.

We think it is clear that the "peep show" booths at issue are not "theaters" within the meaning of the Freder-

ick City Code. In *Ellwest, supra,* the Court of Appeals was called upon to determine whether a location containing 21 booths, each equipped with its own coin operated movie projector and screen, was a theater. In that case, the Department of Housing and Community Development and the Mayor and City Council of Baltimore sought to invalidate certain permits issued to Ellwest for the improvement of 7 North Guilford Avenue in Baltimore City, including a permit to operate an arcade which contained the 21 booths. The City argued that Ellwest was operating a theater "which [required] a City Ordinance for the construction of or conversion of a building into a theater." 263 Md. at 678, 284 A.2d 406.

After reviewing various definitions of the word "theater," the Court concluded that Ellwest's booths were not theaters. It said:

The type of business conducted by Ellwest would not be a theater under any of the above definitions. There is no general admission or any admission money paid upon entering the premises, the only paying being made by placing a coin in the slot in the private booth to activate the projector in that individual booth. Furthermore, the premises contain no assembly space of any consequence. 263 Md. at 682, 284 A.2d 406.

As in *Ellwest,* the booths operated by appellant do not fit within the ordinary meaning of the word "theater." We recently said in *Washington Sanitary Com'm v. Elgin,* 53 Md.App. 452, 454 A.2d 408 (1983), that the terms of a statute, not specifically defined, should be construed as having their ordinary and commonly accepted meaning. Moreover, the interpretation placed by the Comptroller and the Tax Court upon a tax statute "is entitled to great weight as an administrative interpretation acquiesced in by the legislature," unless that interpretation is contrary to the clear and unambiguous language of the statute. *See Scoville Service, supra,* 269 Md. at 396, 306 A.2d 534.

Inasmuch as the ordinary meaning of the word "theater" does not include "peep show" booths, we hold that the

decision of the Tax Court was supported by substantial evidence.

### C.

■ Appellant also contends that the "peep show" equipment is not subject to the admissions and amusement tax, because it is not recreational facilities or equipment. We find that argument to be without merit.

It is a cardinal rule of statutory construction that, in interpreting the language of a statute, the Court must ascertain and carry out the real intention of the legislature. *Management Personnel Services, Inc. v. Sandefur,* 300 Md. 332, 478 A.2d 310 (1984). And, of course, the primary source for determining the legislature's intent is the language of the statute itself which, as we said previously, should be construed according to its ordinary and natural import. *Comptroller of the Treasury v. Fairchild Industries, Inc.,* 303 Md. 280, 493 A.2d 341 (1985).

Prior to 1979, Article 81, § 402(b)(3) authorized incorporated municipalities to levy a tax on gross receipts derived from the amounts charged for "the use of sporting or recreational facilities or equipment, including the rental of sporting or recreational equipment." In 1979, the legislature amended the statute to include "[and] games of entertainment." The purpose of the amendment was to make clear that admissions and amusement taxes applied to games of entertainment such as coin operated amusement devices. 1979 Laws of Maryland, Ch. 535. Thus, we think it clear that the legislature intended by Art. 81, § 402(b) to authorize an incorporated municipality to tax revenues derived from pinball machines, video games, *and* "peep show" equipment such as that operated by appellant.

The plain language of the statute lends further support to our interpretation. Webster's Third New International Dictionary defines "recreation" as "a means of getting diversion or entertainment." "Equipment" is defined as "the implements used in an operation or activity." We think it is

reasonable, therefore, to conclude that appellant's "peep show" equipment is equipment used for "diversion or entertainment." *See also Commerce–Pacific, Inc. v. United States,* 278 F.2d 651 (9th Cir.1960), *cert. denied,* 364 U.S. 872, 81 S.Ct. 115, 5 L.Ed.2d 94 (1960) (term "recreational equipment" connotes equipment and goods used in recreation, pastimes, games, diversion and amusement).

In view of all of this, we are convinced that the Tax Court's decision was supported by substantial evidence, and that the receipts from appellant's "peep show" booths were properly assessed at the 10% rate.

## II.

■ Finally, appellant contends that Art. 81, § 402 of the Maryland Annotated Code is unconstitutional. Specifically, appellant contends that the statute is vague and ambiguous on its face, and that it fails to give the taxpayer notice of what constitutes "sporting and recreational facilities and equipment."

■ Alas for appellant, we are unable to reach the merits of that claim. A careful review of the record reveals that appellant did not argue before the Tax Court that the statute was unconstitutional. Instead, appellant raised the constitutional issue for the first time in the circuit court.[2]

In spite of the issue having been raised in the circuit court, the record from the circuit court contains only the docket entries, the record from the Tax Court, and the order

---

**2.** Ordinarily, issues not raised in the Tax Court are not properly before the circuit court or the appellate courts. *State Department of Assessment and Taxation v. Clark,* 281 Md. 385, 380 A.2d 28 (1977). However that may be, inasmuch as the Tax Court is an administrative agency, performing a quasi-judicial function, it has no authority to adjudicate the constitutionality of an entire statute. *Verkouteren v. Supervisor of Assessments,* 38 Md.App. 216, 221, 380 A.2d 642 (1977). The constitutionality of Art. 81, § 402 was, therefore, properly raised for the first time in the circuit court.

of the circuit court affirming the decision of the Tax Court.[3] The record does not contain anything by which the circuit court explained the reasons for its action, nor does the record include a transcript of the proceedings in the circuit court. In sum, the record affords us no basis for determining whether the circuit court considered the constitutionality issue at all, and if it considered the issue, whether the court acted properly.

As the Court of Appeals made clear in *King v. State Roads Commission, etc.*, 284 Md. 368, 374, 396 A.2d 267 (1979), it is the responsibility of the parties to insure that a proper record is made.[4] Accordingly, the constitutional issue is not before us to review.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.

---

3. Of course, the record also contains the pleadings, memoranda and motions not pertinent to our inquiry.

4. Of course, in *King, supra*, the Court made it clear that "when ... the record is incomplete through no apparent fault of the appealing party ... 'the purposes of justice will be advanced by permitting further proceedings in the cause ...'" That, however, is not the situation in the case *sub judice*.