## TWINBROOK SWIMMING POOL CORPORATION *v.* COMPTROLLER OF THE TREASURY, ADMISSIONS TAX DIVISION

[No. 130, September Term, 1974.]

*Decided March 3, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Arthur V. King* and *Robert J. Thieblot,* with whom were *Allen, Thieblot & Alexander* on the brief, for appellant.

*Gerald Langbaum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Jon F. Oster, Assistant Attorney General,* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

This is an appeal from an order of the Maryland Tax Court, which affirmed the Comptroller of the Treasury's disallowance of a claim for the refund of admissions taxes in the amount of $6,263.01 collected for the tax years 1970, 1971 and 1972, from Twinbrook Swimming Pool Corporation (Twinbrook). We propose to reverse the order of the Tax Court and remand the case for the entry of an order directing that the refund claimed be made by the Comptroller.

There was testimony that Twinbrook was organized in 1955 for the purpose of constructing a community swimming pool near Rockville, Maryland. The bylaws provided for a maximum of 600 life memberships to be held by families living in certain residential areas. Each family which holds a life membership made an initial contribution of $200.00, and currently pays annual dues of $55.00. For the first time in the 1970 tax year, annual memberships were offered to other families at a charge of $125.00. In both categories, members of each household are entitled to use the pool without additional charge, except for the fees which are exacted for guests.

Twinbrook is located on a fenced site of about five acres, which is lighted. The pool is of Olympic size with a well and two diving boards. In addition to the pool, there is a two-story building which houses a snack bar and dressing rooms, and a hard surfaced parking lot. The facility opens on Memorial Day and closes on Labor Day. Twinbrook is not authorized to issue stock and is not operated for profit.

It would seem that the Comptroller imposed a tax on the dues paid for both life memberships and annual

memberships. Twenty-five percent was deducted from the dues paid for life memberships prior to the computation of this tax on the theory that this amount was expended for the maintenance of Twinbrook's property.[1]

Our present statute, Maryland Code (1957, 1969 Repl. Vol., 1974 Cum. Supp.) Art. 81, § 402 (a) provides for the levy of an admissions and amusement tax by the counties. It is quoted in part:

> "Effective July 1, 1972, any county by resolution may levy a tax on the gross receipts of every person, firm or corporation obtained from sources within the county derived from the amounts charged for (1) admission to any place, whether the admission be by single ticket, season ticket or subscription, including a cover charge for seats or tables at any roof garden, cabaret or other similar place where there is furnished a performance, if payment of the amounts entitles the patron thereof to be present during any portion of the performance; (2) admission within an enclosure in addition to the initial charge for admission to the enclosure; (3) the use of sporting or recreational facilities or equipment, including the rental of sporting or recreational equipment; and (4) refreshment, service or merchandise at any roof garden, cabaret or similar place where there is furnished a performance."

\* \* \*

> "... The tax levied by this subsection shall be collected by the Comptroller."

Montgomery County has been authorized to impose an admissions tax since 1 July 1969, when Code (1957, 1969

---

1. The Comptroller based the 25% deduction on the Twinbrook bylaw provision which designates 25% of the annual dues as a maintenance fee. This amount is charged regardless of whether or not the life member exercises his right to use the facilities in a given year.

Repl. Vol.) Art. 81, § 403 was amended by chapter 755 of the Laws of 1969. Although Art. 81, § 403 (later § 402) was amended at each session of the General Assembly in the years 1969-1973, except for adjustments made to the State tax rate,[2] the amendments are of no significance here. For a discussion of the transfer of the power to levy an admissions tax from the State to the political subdivisions *see* 57 Op. Att'y Gen. 680, 681 (1972).

By resolution 7-207, adopted 21 May 1971, Laws of Montgomery County (1971) at 448, the Montgomery County Council imposed a tax of $9^{1}/_{2}\%$ effective 1 July 1971. The County Council reduced the tax rate effective 1 July 1972 to $4^{1}/_{2}\%$ by resolution 7-538 adopted 14 December 1971. In response to Laws of 1972, ch. 689, § 2 which continued the State tax of $^{1}/_{2}\%$ from 1 July 1972 to 2 January 1973, the County, by resolution 7-832 adopted 15 August 1972, lowered its admissions tax from $4^{1}/_{2}\%$ to 4% for this six-month period. The resolution also reinstated the $4^{1}/_{2}\%$ tax rate as of 3 January 1973 when the State totally eliminated its tax.

The present County ordinance, with changes which are of no consequence here, is found at § 52-16A of the Montgomery County Code (1972, 1973 Cum. Supp.):

"The county council, pursuant to the authority granted in section 402, article 81, Annotated Code of Maryland, 1957, as amended, hereby levies a tax at the rate of four and one-half per centum of the gross receipts of every person, firm or corporation derived from the amounts charged in Montgomery County for (1) admission to any place, whether such admission be by single ticket, season ticket or subscription, including a cover charge for seats or tables at any roof garden, cabaret or other similar

---

**2.** The admissions tax imposed by the State of Maryland, as it affected Montgomery County, during the period relevant here, was as follows: $4^{1}/_{2}\%$ for the period 1 June 1969 through 30 June 1971 and $^{1}/_{2}\%$ for the period 1 July 1971 through 2 January 1973. Although the State tax was to be totally eliminated as of 1 July 1972, Laws of 1972, ch. 689, § 2 provided that should a county have a tax in effect on 30 June 1972, the State tax of $^{1}/_{2}\%$ would continue until 2 January 1973.

place where there is furnished a performance when payment of such amounts entitles the patron thereof to be present during any portion of such performance, (2) admission within an enclosure in addition to the initial charge for admission to such enclosure, (3) the use of sporting or recreational facilities or equipment, including the rental of sporting or recreational equipment, and (4) refreshment, service or merchandise at any roof garden, cabaret or other similar place where there is furnished a performance."

For cases considering the admissions tax *see Scoville Service, Inc. v. Comptroller,* 269 Md. 390, 306 A. 2d 534 (1973); *Villa Nova Night Club, Inc. v. Comptroller,* 256 Md. 381, 260 A. 2d 307 (1970); *Fair Lanes, Inc. v. Comptroller,* 239 Md. 157, 210 A. 2d 821 (1965).

Attorney General Hall Hammond (later a member of this Court), on two occasions considered the question whether club dues were subject to the admissions tax. In 33 Op. Att'y Gen. 373, 374-75 (1948), he said:

"From studying the wording of this Section of the Act and the entire Act itself, it seems to us that it was the intention of the Legislature to place the tax on admissions and not on membership dues. From the practical standpoint, it is well known that membership dues in a country club are spent, in the majority, for other than recreational or sports facilities. From the proceeds of the membership dues, taxes are paid, interest on outstanding indebtedness and capital indebtedness, costs of food over and above the cost paid by members at the time the meal is served, salaries of officers and employees are paid, and actually all of the operating expenses of the club are paid from membership dues. In fact, many members of country clubs retain their membership and pay membership dues purely for social reasons or reasons of convenience and never use the

recreational or sporting facilities offered by the club. In view of the fact that it is from a practical standpoint impossible to determine what percentage of membership dues goes toward recreation and entertainment facilities of each individual member, we feel that the Legislature did not intend that the tax be charged. If the Legislature had intended that the admissions tax on membership dues of country clubs should be levied, it could easily have placed such dues within the taxing provisions of the Act. To hold such membership dues taxable, would, in our opinion, be reading something into the statute not presently found there. Therefore, we hold that membership dues paid by members of country clubs are not subject to the admissions tax. However, we feel that this ruling does not apply to cases where members or guests pay green fees for the privilege of playing golf or where members or their guests pay any fee or charge which is strictly an admissions charge to use the club or any of its facilities. In such cases, we are of the opinion that this admissions charge is subject to the tax."

Later, in 34 Op. Att'y Gen. 251, 251-52 (1949) he reiterated the same view:

"As you know, the tax imposed by the admissions and amusement tax sub-title of Article 81 does not apply to dues collected by country clubs. . . ."

* * *

"We believe that the gross receipts derived from the charges imposed or collected by country clubs for the use of tennis facilities and swimming pools . . . are liable to the tax when such gross receipts inure to the benefit of the country club. . . ."

Comptroller's Regulation 3 (1965), adopted pursuant to

Code Art. 81, § 410 (formerly § 409), purports to refine the tax originally imposed by Art. 81, § 402 and later permitted by Art. 81, § 403:

### "REGULATION NO. 3—CLUB MEMBERSHIP

"The gross receipts derived from amounts paid to become regularly entitled to the privileges of a club or other organization, as a member or otherwise, are not derived from the amounts charged for 'admissions', even though one of the privileges be the right to enter a clubhouse, club grounds, gymnasium, swimming pool or the like. Gross receipts derived from the amounts charged for admissions or fees charged club members or non-members for the use of a bowling alley, golf course, tennis court, swimming pool or the like are gross receipts derived from the amounts charged for the use of sporting or recreational facilities or equipment and are subject to the tax. Likewise, the tax attaches to the gross receipts derived from the amounts charged club members or non-members for admission to dances, exhibitions and the like. But, where the chief or sole privilege of a so-called membership is a right of admission to certain particular performances or to some place on a definite number of occasions (as contrasted with a more or less unlimited right to enter a club or other place as many times as desired during a year or some other period), then the gross receipts derived from the amounts paid for such so-called memberships are subject to the tax."

It seems to us that the Comptroller's regulation, for all practical purposes, followed the statutory interpretation adopted by the Attorney General.

In reenacting the statute during the years which have intervened, the General Assembly has impliedly acquiesced in the correctness of the construction placed on it by the

Attorney General, *Crest Investment Trust, Inc. v. Cohen*, 245 Md. 639, 647-50, 227 A. 2d 8, 13-14 (1967); *Benco Vending, Inc. v. Comptroller*, 244 Md. 377, 382, 223 A. 2d 759, 762 (1966); *Leitch v. Gaither*, 151 Md. 167, 176-77, 134 A. 317, 320 (1926).

The only question is whether there is a difference between a country club and a swimming club. In neither case do the dues which are paid constitute a charge which is imposed upon entering the club premises or a part of the premises, *Scoville Service, Inc. v. Comptroller, supra*, 269 Md. at 395. Just as a dues-paying member of a country club may never enter the club grounds and never use its facilities, a dues-paying member of a swimming club may or may not ever go there to swim.

Of equal significance is the fact that a member who uses the facilities of his club daily pays the same amount as the member who uses the club occasionally, or not at all. As Arthur V. King, a member of Twinbrook, testified, a family with 10 children paid the same dues as a family with none. If the amount paid by a member is in no way proportionate to his attendance or participation, it cannot be an admissions fee, *Lincoln Dinner Club v. United States*, 143 F. Supp. 398 (D. Neb. 1956) *appeal dismissed*, 237 F. 2d 919 (8th Cir. 1956); *Executives Club of Louisville v. Glenn*, 107 F. Supp. 668 (W.D. Ky. 1952). If operating expenses of a club are shared by its members without insistence upon equivalence between the proportion of an individual's contribution and the proportion of benefits he receives, the payments which a member makes are dues, *White v. Winchester Club*, 315 U. S. 32, 41 (1942).

It is this very fact which distinguishes annual dues from guest charges, green fees, or tennis fees, where payment is fixed by each occasion of actual use, *Merion Cricket Club v. United States*, 315 U. S. 42, 43 (1942). If a swimming club has only one such facility — a pool — and dues-paying members are entitled to use it as often as they wish, the dues paid by members are no more subject to admissions tax than dues paid to a club with a single recreational facility —

a card room, a billiard room or the like. Of course, the guest charges remain subject to tax, as Twinbrook concedes.

> *Order reversed, case remanded to the Maryland Tax Court for the entry of an order vacating the Comptroller's denial of the refund claimed and directing that the refund be made with interest; costs to be paid by the appellee.*